IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL WAYNE STEWART, | § | |
| TDCJ # 906797, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-14-1483 |
| | § | |
| BRAD LIVINGSTON, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM AND ORDER</u>

State inmate Michael Wayne Stewart (TDCJ # 906797) filed this lawsuit under

42 U.S.C. § 1983, alleging violations of his civil rights while he was incarcerated at

several units in the Texas Department of Criminal Justice – Correctional Institutions

Division (collectively "TDCJ").  These units are located in various parts of the State

of Texas.  He identifies at least sixteen TDCJ officials as defendants.  After reviewing

all of the pleadings as required by 28 U.S.C. § 1915A, the Court concludes that

certain claims must be **dismissed** and that others must be **transferred** to the

appropriate federal judicial districts.  The Court also concludes that the Texas

Attorney General's Office **must submit a *Martinez*[1] report and medical or other**

**records regarding claims as discussed hereafter**.

---

[1]      *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

## I.   <u>BACKGROUND</u>

Stewart presents a long and somewhat confusing narrative about being forced to travel in unsafe conditions and later being denied adequate medical attention by numerous prison employees [Doc. # 1-1, 1].  He names the following individuals as defendants: TDCJ Director Brad Livingston, TDCJ Transportation Director Lonny Johnson, Correctional Officer Kyle Jordan Nash, Correctional Officer James Andrews, Correctional Officer Jacklyn Wischnewsky, Lieutenant [First Name Unknown] Johnson, Sergeant [First Name Unknown] Castillo, Sergeant Kevin Schiwart, Correctional Officer [First Name Unknown] Mimms, Correctional Officer [First Name Unknown] Spencer, Warden Cynthia Tilley, Captain Kevin Stipes, Lieutenant Kevin Harris, Sergeant Samuel Matthews, Correctional Officer Jared Pollard, and Dr. Frank A. Leonard [Doc. # 1, p. 4].

The essence of Stewart's complaint is that he suffered serious bodily injury in a collision that occurred in 2012 while he was being transported to a prison unit in a TDCJ bus that was negligently operated by TDCJ guards.  It appears the collision occurred in the Southern District of Texas and that some medical treatment was rendered in the Southern District as well.  Stewart alleges that after his release from the hospital, he was transferred to three different TDCJ units and was abused by numerous guards on several separate occasions while he was in those different

2

facilities.   The units in issue are: the Robertson Unit in Jones County, Texas; the Allred Unit in Wichita County, Texas; and the Boyd Unit in Freestone County, Texas. The Robertson and Allred units are located in the Northern District of Texas, and the Boyd Unit is located in the Western District of Texas.   Stewart also claims that he was denied medical care and subjected to retaliation in several locations.

### A.     The Collision

Stewart states that Correctional Officers Jordan Nash and James Andrews were operating the TDCJ bus that was transporting him to another unit on July 6, 2012. He alleges that the officers did not pay attention to the road ahead of them and that Nash failed control the bus [Doc. # 1, p. 11].   Stewart contends that the officers' negligence, coupled with Nash's failure to apply the brakes, resulted in the bus colliding with a stationary emergency vehicle.

Stewart alleges that he was placed in the middle of the bus next to a window and that his right wrist was handcuffed to another prisoner.  *Id.*  He also states that he kept his personal belongings on the floor in front of his seat because that was the only place available and he wore no seatbelt because none was provided for the inmates on the bus.  *Id.* at 11-12.

Stewart does not specify exactly where the accident occurred, but he does state that it happened as the bus was approaching the entrance to Interstate 45 north of

3

Houston, Texas [Doc. # 1, p. 14].[2]  Just before the accident, Stewart was riding in a crouched position with his head resting on his left arm.  *Id.*  Suddenly, he felt the bus jerk which caused him to rock forward in his seat and his property bag to slide away from him.  Stewart reached reflexively for the bag and was thrown forward slamming his head against a seat bench.  He found himself in an excruciating position wedged between two seats and feeling pain in his neck and back.  *Id.* at 15.  The offender cuffed to Stewart was released and removed from the bus, but Stewart had to remain because he was pinned by the seats.  *Id.* at 16.  It took the efforts of several firefighters to finally extricate him from the wreckage.

In regard to the bus accident, Stewart names, in addition to Nash and Andrews, TDCJ Director Brad Livingston contending that Livingston is generally responsible for the overall operation of the prison system.  *Id.* at 5.  He also names Lonny Johnson who is in charge of the TDCJ Transportation Division contending that he is responsible for the operations of that department.  *Id.*  Finally, Stewart names Jacklyn Wischnewsky, a TDCJ transportation officer who allegedly was responsible for the condition of the bus and compelled Stewart to ride in it.  *Id.* at 6.

---

[2]     It thus appears the collision took place in this District.

4

### B.   Denial of Medical Treatment and Other Alleged Wrongs

#### 1.   Post-Accident Hospital Care (July 2012)

After being removed from the bus, Stewart was taken by ambulance to a hospital where he was given morphine to alleviate the pain [Doc. # 1-1, p. 1].  Tests did not reveal any fractures, but a doctor informed Stewart that he had strained his neck and lower back.  *Id*.  He was also told that TDCJ would not allow him to continue to be treated with morphine, but that another acceptable pain medication would be prescribed for him and that he should notify TDCJ officials if he started to feel worse.  *Id.*

#### 2.   Post-Accident Goree Unit (July 2012)

Stewart's condition began to deteriorate after he was returned to TDCJ and was assigned to the Goree Unit in Huntsville.  *Id.*  He describes his suffering as "a constant excruciating pain shooting down" his neck and left side of his body.  *Id.* at 2-3.  He also reports experiencing numbness and weakness.

#### 3.   Robertson Unit (September 2012)

Stewart was then transferred to the TDCJ Robertson Unit, near Abilene, Texas, where he claims that he was denied medical treatment despite his requests and obvious need.  *Id.*  He alleges that on September 25 or 26, 2012, Lieutenant Johnson

and Sergeant Castillo[3] forced him to walk to a transportation van despite the fact that the purpose of the trip was for a medical appointment and that he had been issued a wheelchair pass. *Id.* at 3. When Stewart objected, Johnson and Castillo dragged him down a prison hallway and left him in a cell. *Id.* at 4. Stewart further alleges that the two officers denied him medical attention despite the fact that he was suffering because of their rough treatment. *Id.*

### 4.  Allred Unit (November 2012)

Stewart subsequently was transferred to the TDCJ James Allred Unit, located in Iowa Park, Texas. He alleges that on November 6, 2012, that Correctional Officers Mimms and Spencer[4] were assigned to escort him to the medical department. *Id.* Stewart again had difficulty moving himself, and officers refused to help him. Instead, Sergeant Kevin Schiwart joined the officers and told Stewart, "No one is calling for medical assistance for you, medical has already said [they're] not providing a wheel chair to [sic] assist you." [Doc. # 1-1, p.5] Once again, officers allegedly dragged Stewart down the hallway while he suffered intense pain, this time while handcuffed, and left him in a cell where Sergeant Schiwart removed the restraints. *Id.* Stewart also alleges that the officers denied him medical attention in

---

[3]     Stewart does not know these defendants' first names [Doc. # 1, pp. 6-7].

[4]     No first names are given.

spite of his obvious need.

### 5. Boyd Unit

Stewart was later transferred to the TDCJ Boyd Unit where he alleges another denial of his right to medical care. He alleges that on July 12, 2013, Dr. Frank A. Leonard and Head Warden Cynthia Tilley met with Stewart at the unit infirmary and told him that he would be moved to a solitary confinement cell, without his wheelchair, to determine if he was capable of moving around his cell. *Id.* at 5-6. Captain Kevin Stipes and a trustee named Hill were given the assignment of moving Stewart to the cell. When they came to the entrance outside the cell area, they found that they could not fit Stewart's wheelchair through the door. Because of this, Captain Stipes told Stewart that they would have to lift him out of the chair and put him in the cell. *Id*. at 6. Stewart responded that he was in pain and that Stipes and Hill did not know the correct way to handle and move him. Despite Stewart's protests, the two men dragged him to his cell and left him there writhing in pain. *Id.*

### 6. Jester III Unit (August-November 2013)

Stewart was transferred to the TDCJ Jester III Unit on August 6, 2013. *Id.* at 7. While there, he alleges, he was seen and treated by Dr. Tawana Smith on several occasions. *Id.* After examining Stewart's MRI and X-rays, Dr. Smith prescribed Gabapentin, a medication which Stewart says helped alleviate the pain in his neck and

extremities.  In spite of the benefits derived from Gabapentin another physician, Dr. Frank A. Leonard of the UTMB John Sealy Hospital in Galveston, allegedly reduced the medication from three times daily to twice daily.  *Id.*  When Stewart complained that the medication was not working, Dr. Leonard cancelled the prescription.  *Id.* at 8.   Stewart complains that he suffered without the medication and that the prescription be reinstated each time Dr. Leonard saw him during subsequent visits. Dr. Leonard denied the requests although an MRI taken on November 4, 2013, and a nerve conduction test administered on November 5, 2013, both indicated that Stewart had sustained neurological damage to the cervical section of his spinal cord. *Id.*  Stewart believes that Dr. Leonard stopped the medication because he had been filing grievances with the prison administration.  *Id.* at 6.

### 7.   Boyd Unit (December 2013)

Stewart indicates that he was returned to the TDCJ Boyd Unit sometime during late November or early December of 2013.  On December 2, 2013, he was sitting on his cell toilet cell when Lieutenant Kevin Harris came into the cell and pulled his wheelchair out of it [Doc. # 1-1, p. 8].  The chair's removal forced Stewart to grab the sink to keep from falling.  Although Stewart was experiencing difficulty staying upright, Harris refused his request for help with transferring from the toilet to the cell bed.  Stewart alleges that he then fell to the floor and knocked himself unconscious.

*Id.* at 9.  Correctional Officer Jared Pollard, who was on duty that day, saw Stewart sprawled on the floor in apparent distress.  Pollard reported Stewart's condition to his supervisor, Sergeant Samuel Matthews.  Matthews instructed Pollard to leave Stewart where he was, but to check on him every 15 minutes to see if he moved.  *Id.*  Stewart was left in his cell for 13 hours until the morning of December 3, 2013, when he was taken first to the infirmary and then to the emergency room in Fairfield, Texas, where he was diagnosed with a contusion to his head and his hip from the fall.

## C.    Damages Claimed and Other Relief Sought

Stewart complains that he continues to experience sharp pains in his neck as well as other parts of his body resulting from the trauma he suffered during the bus accident.  He claims that he has been denied adequate medical treatment for his condition although he has stated that he has been taken to various infirmaries as well as John Sealy Hospital.  He seeks compensatory damages in the amount of $250,000 from each named defendant in both their individual and official capacities.  He seeks an additional $75,000 from each of the medical care providers for the alleged delay in treatment as well as $50,000 from the other non-medical care officials for their alleged roles in delay of care as well as for their acts of retaliation, harassment, and physical abuse [Doc. # 1-1, p. 12].  He also seeks injunctive relief for medical care and cessation of assaults and abuse as well as any future retaliatory acts against him.

9

*Id.* at 12-13.

## II.   <u>STANDARDS OF REVIEW</u>

### A.   <u>Frivolous Claims</u>

This civil action is subject to review under 28 U.S.C. § 1915A, which applies to all pleadings filed by incarcerated litigants.  Under this statute, a district court "shall dismiss the complaint or any portion of the complaint, if the complaint (1) is frivolous or malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).  In conducting this analysis, "[a] document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

A court may dismiss a complaint as frivolous  "if it lacks an arguable basis in law or fact." *Geiger v Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).  "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).

### B.   Venue

In reviewing a civil complaint, the Court must also consider whether it was filed in the proper district, and is authorized to transfer it in the interest of justice to another district in which the action might have been brought.  *See* 28 U.S.C. §§ 1404, 1406.  A district court has "broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1999).  The Court also has broad discretion to sever and transfer issues that should be tried in another district. *See*  Fed. R. Civ. P. 21." *Irvine v. Fernald*, 125 F. App'x 588, 589 (5th Cir. 2005) (citing *Mills v. Beech Aircraft Corp.,* 886 F.2d 758, 761 (5th Cir. 1989)); *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994).

## III.   DISCUSSION

Stewart asserts that his rights were violated under 42 U.S.C. § 1983.  This statute provides a private right of action for damages to individuals who are deprived of "any rights, privileges, or immunities" protected by the Constitution or federal law by any person acting under the color of state law.  42 U.S.C. § 1983; *Breen v. Texas A&M Univ.*, 485 F.3d 325, 332 (5th Cir. 2007).  To establish liability under § 1983, a civil rights plaintiff must establish two elements:  (1) state action, *i.e.*, that the conduct complained of was committed under color of state law, and (2) a resulting violation of federal law, *i.e.,* that the conduct deprived the plaintiff of rights secured

11

by the Constitution or laws of the United States.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); *Baker v. McCollan*, 443 U.S. 137, 142 (1979); *see also Doe ex rel. Magee v. Covington County School Dist. ex rel. Keys*, 675 F.3d 849, 854 -855 (5th Cir. 2012) (To state a claim under 42 U.S.C. § 1983, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.") (citing *James v. Tex. Collin Cnty.,* 535 F.3d 365, 373 (5th Cir. 2008)).

Stewart sets forth myriad claims involving a wide range of parties involved in separate alleged actions occurring on different dates.  The Court will address preliminarily the legal validity of each of these claims, and whether the claims should be retained in this District or transferred.

### A.    Claims Against Supervisory Officials

Stewart names TDCJ Director Brad Livingston as a defendant in this action. He contends that Livingston is liable because he is responsible for all operations in the prison system.  Stewart also names Lonny Johnson who is the director of TDCJ's Offender Transportation Division claiming that he is responsible for the operations of that department.  An official cannot be held liable under section 1983 merely because he has supervisory authority over subordinate officials who alleged to have

12

committed a constitutional violation. *Rios v. City of Del Rio*, Tex. 444 F.3d 417, 425 (5th Cir. 2006); *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996). "A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). There are no allegations suggesting that either Livingston or Johnson were in any way connected deliberately indifferent acts against Stewart or his serious health needs. *Brown v. Callahan*, 623 F.3d 249, 255-256 (5th Cir. 2010). Therefore, Livingston and Johnson shall be dismissed. *Id.*

### B.   Claims Regarding Conduct Resulting in Damage from the Collision

Stewart alleges that he was injured in a collision while riding in a TDCJ bus that was driven by a TDCJ officer who failed to control his speed and apply the brakes when necessary. He also alleges that the officers on the bus failed to maintain a proper lookout for other vehicles. Finally, he complains that the officers and others responsible for the maintenance and operation of the bus, failed to ensure that he was securely fastened to his seat when the collision occurred.

Stewart, a prisoner, must show that the defendants, prison officials, subjected to him to cruel and unusual punishment in violation of the Eighth Amendment in order to recover on claims under § 1983. *Palmer v. Johnson,* 193 F.3d 346 (5th Cir.

13

1999).  The Eighth Amendment prohibits prison officials from engaging in behavior that would shock the public conscience.  *Thomas v. Bryant*, 614 F.3d 1288, 1306-07 (11th Cir. 2010); *Porth v. Farrier*, 934 F.2d 154, 157 (8th Cir. 1991); *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983).  It does not ensure that a convicted felon like Stewart will be housed or transported in a perfectly secure environment.  *See Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).   Stewart's Eighth Amendment rights are violated only if he is subjected to dangerous conditions due to a prison official's wanton and obdurate conduct.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Whitley v. Albers*, 475 U.S. 312, 319 (1986).   Therefore, Stewart must show that the defendants were deliberately indifferent to his safety and serious health needs.  *Farmer v. Brennan,* 511 U.S. 825, 843 (1994); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

More specifically, in maintaining a deliberate indifference claim, the prisoner must present facts showing that the particular defendant in issue was subjectively aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and that he actually drew an inference that such potential for harm existed.  *Palmer*, 193 F.3d at 352; *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing *Farmer*, 511 U.S. at 837).  The deliberate indifference standard embodies both an objective and a subjective prong.  As to the subjective prong, the

14

defendant prison official's state of mind must be one of deliberate indifference to inmate health or safety. The official can only be liable if he ignores a danger to an inmate after he has been made fully aware of it. *Jackson v. Cain*, 864 F.2d 1235, 1246-47 (5th Cir. 1989).

Stewart alleges that Officers Nash and Andrews were responsible for the collision because they were negligent in operating the bus. Moreover, the facts Stewart alleges in his complaint amount to claims sounding in negligence, not an intentional tort. Negligent acts alone do not support a claim of deliberate indifference. *Estelle*, 429 U.S. at 106; *Brumfield v. Hollins*, 551 F.3d 322, 333 (5th Cir. 2008) (citing *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 650 (5th Cir. 1996) (providing that negligence is insufficient to meet the standard for deliberate indifference). Consequently, Stewart cannot establish a violation of his civil rights with regard to the collision. *See Brown v. Fortner*, 518 F.3d 552, 560 (8th Cir. 2008) (prison bus driver who caused crash by driving at excessive speeds too close to vehicle in front of him was not deliberately indifferent where there was no showing that he refused to slow down when being asked to do so); *Walker v. Reed*, 104 F.3d 156 (8th Cir. 1997); *Coon v. Ledbetter*, 780 F.2d 1158, 1163 (5th Cir. 1986) ("[I]t is plain that a person injured in an auto accident when a police officer negligently fails to yield the right-of-way has no claim for deprivation of constitutional right.").

15

Stewart also complains that his constitutional rights were violated because there were no seatbelts or other passenger safety devices on the bus.  The absence of seatbelts on a prison transportation van or bus is not an infliction of cruel and unusual punishment in violation of the Eighth Amendment.  *Jabbar v. Fischer*, 683 F.3d 54, 58 (2d Cir. 2012); *Smith v. Secretary For Dept. of Corrections*, 252 F. App'x 301, 304 (11th Cir. 2007) (citing *Spencer v. Knapheide Truck Equipment Co.,* 183 F.3d 902, 904–06 (8th Cir. 1999) (transporting prisoners on a steel bench in a van without safety restraints did not pose a substantial risk of serious harm)).[5]   Therefore, all claims concerning the bus collision and the resultant injuries must be **dismissed**, and the officials sued in that connection must be **dismissed** from this action.

**C.    Claims of Denial of Medical Care and Other Treatment or Conduct by Officers after the Collision**

The second part of Stewart's complaint concerns the treatment he received after the collision  Stewart states that he was taken to a hospital where he was examined diagnosed with neck and back injuries.  He also states that he was given morphine, a narcotic pain reliever, but that this medication was discontinued in anticipation of his return to prison.  Stewart complains also that in mid-to-late 2013, when in

---

[5]    Moreover, failure to provide seatbelts on a prison bus is not a violation of the Fourteenth Amendment.  *Jabbar*, 683 F.3d at 58 (citing *Daniels v. Williams*, 474 U.S. 327, 331-333 (1986) (negligence is not a due process violation)).

Galveston he was provided with an effective medicinal substitute, but that Dr. Leonard of the UTMB John Sealy Hospital, Galveston, first reduced the dosage and then eliminated the medication altogether.  Stewart also alleges that guards at various units either denied him the use of his wheelchair, forced him to walk, dragged him or all of the above.

An inmate's right not to be subjected to cruel and unusual punishment may be violated if a medical care provider knowingly denies him medication that results in 'unnecessary and wanton infliction of pain.'"  *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006), *quoting Wilson v. Seiter*, 502 U.S. 294, 297 (1991).  On the other hand, the Eighth Amendment does not guarantee an inmate to his choice of treatment or the right to dictate the type and dosage of medication prescribed to him.  *Sama v. Hannigan*, 669 F.3d 585, 590-591 (5th Cir. 2012); *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (disagreement with treatment does not support deliberate indifference claim).  There is no guarantee that his ailments will be successfully treated.  *Vallado v. Mendez*, 547 F. App'x 396, 397 (5th Cir. 2013) (citing *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir.1991)); *Gobert*, 463 F.3d at 346.

At this time, the Court does not question Stewart's declaration that he suffers from back pain, but this alone does not establish a constitutional violation.  *See Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992) ("Continuing back pain is

17

unpleasant. Its existence does not, however, in and of itself demonstrate that a constitutional violation occurred."). Stewart asserts that he was denied effective medication for no apparent reason, but he does admit that Dr. Leonard and other health care providers saw him on multiple occasions after he was returned to TDCJ. Although Stewart has filed a lengthy complaint, certain critical information is missing regarding the extent of attention given to his malady. An understanding of Stewart's medical history, from official medical records that include diagnoses and prescribed treatments, is necessary in determining whether there is any legal basis for his claims. *See Gobert*, 463 F.3d at 346 -347.

Stewart also presents several narratives in which he alleges that guards or officers forcibly removed him from his wheelchair or compelled him to move himself without the use of a chair. If there were doctors' orders prohibiting Stewart from walking unassisted, some of these alleged actions might constitute a violation of his constitutional rights if the officials acted with full knowledge of his incapacities and acted with deliberate indifference to them. *Calhoun v. Hargrove*, 312 F.3d 730 (5th Cir. 2002); *Jackson v. Cain*, 864 F.2d 1235, 1247 (5th Cir. 1989). However, if the custodial officials understood or believed after consulting with medical authorities or reviewing available records that Stewart was capable of functioning without a wheelchair, no violation can be found. *See Lewis v. Lynn*, 236 F.3d 766, 767-68 (5th

18

Cir. 2001). There also can be no violation if the officials were not aware of his incapacity. *See Walker v. Butler*, 967 F.2d 176, 178 (5th Cir. 1992).

As noted in regard to health care provided, Stewart's allegations regarding denials of medical care and possible abuse by custodial officials do not address essential facts regarding his medial diagnoses and actions taken to treat him. It also is unclear which named custodial official defendants were aware of his maladies or medical restrictions, if any, or whether they should have been aware of the same. Further, Stewart alleges misconduct by numerous officials in the Northern District of Texas (Robertson and Allred Units) and the Western District of Texas (Boyd Unit). These alleged incidents or deprivations are separate from those alleged to have occurred in the Southern District of Texas. More details are required.

The Texas Attorney General accordingly is **ordered** to file a **special report** regarding Stewart's physical condition and medical care supported by copies of all pertinent medical records as well as statements, policies, and procedures pertinent to the issues in this cause to assist the Court in analyzing Stewart's claims. *See Parker v. Carpenter*, 978 F.2d 190, 191-92 n.2 (5th Cir. 1992) (*citing Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978)); *Cay v. Estelle*, 789 F.2d 318, 323 n.4 (5th Cir. 1986).

## IV.    SEVERANCE AND TRANSFERS

Stewart's claims against Lieutenant Johnson and Sergeant Castillo for violations of his rights alleged to have occurred at the TDCJ Robertson Unit shall be **severed** and **transferred** to the United States District Court for the Northern District of Texas, Abilene Division, where the Robertson Unit is located.   28 U.S.C. §§ 1391(b)(2), 1404(a).

Stewart's claims against Sergeant Kevin Schiwart, along with Correctional Officers Mimms and Spencer, for wrongs alleged to have occurred at the TDCJ Allred Unit shall also be **severed** and **transferred** to the United States District Court for the Northern District of Texas, Wichita Division, the location of the Allred Unit. 28 U.S.C. §§ 1391(b)(2), 1404(a).

Stewart's claims against Warden Cynthia Tilley, Captain Kevin Stipes, Lieutenant Kevin Harris, Sergeant Samuel Matthews, and Correctional Officer Jared Pollard for violations alleged to have occurred at the TDCJ Boyd Unit shall be **severed** and **transferred** to the United States District Court for the Western District of Texas, Waco Division, where the Boyd Unit is located.   28 U.S.C. §§ 1391(b)(2), 1404(a).

The Court will **retain** Stewart's claims of denial of medical care by Dr. Frank A. Leonard.  Dr. Leonard's alleged work assignment is at the UTMB John Sealy

20

Hospital in Galveston, Texas [Doc. # 1, p. 4].

## V.   PLAINTIFF STEWART'S MOTIONS

Stewart has moved for court appointed counsel [Doc. # 10].  A civil rights plaintiff has no automatic right to the appointment of counsel.  *See Hulsey v. State of Texas*, 929 F.2d 168, 172-73 (5th Cir. 1991) (citing *Freeze v. Griffith*, 849 F.2d 172, 175 (5th Cir. 1988); *Cupit v. Jones,* 835 F.2d 82, 86 (5th Cir.1987); *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982)).  The appointment of counsel is not required unless a case presents exceptional circumstances.  *See Hulsey*, 929 F.2d at 173 (citing *Ulmer*, 691 F.2d at 212-13).  Other than pointing to his pauper status and the fact of his confinement, Stewart only asserts that the facts of his case are complex and that he has a limited understanding of the law.  The motion will be **denied** because Stewart has failed to present any exceptional circumstances that would warrant appointment of counsel.  *McFaul v. Valenzuela*, 684 F.3d 564, 581 (5th Cir. 2012).

Stewart's mother, Marilyn Stewart Murphy, has filed a motion seeking issuance of summons  [Doc. # 6], a motion to amend the pleadings [Doc. # 7], and a motion for injunctive relief [Doc. # 13].   Although Ms. Murphy may be the mother of the plaintiff, she is not a licensed attorney and is not authorized to file motions in his behalf.  *Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998) ("in a federal court

a party can represent himself or be represented by an attorney, but cannot be represented by a nonlawyer"). The motions will be **denied** as improperly filed.

## V.   <u>CONCLUSION</u>

Based on the foregoing, the Court **ORDERS** as follows:

1.    Stewart's claim that his constitutional rights were violated due to certain guards' negligence that resulted in the prison bus collision is **DISMISSED** as frivolous. 28 U.S.C. § 1915A.

2.    Defendants Brad Livingston, Lonny Johnson, Kyle Jordan Nash, James Andrews, and Jacklyn Wischnewsky are **DISMISSED** as parties to this action.

3.    Stewart's claims regarding denial of medical care and access to medical care within the Southern District of Texas are **RETAINED** for further review.

4.    The Attorney General of the State of Texas is **ORDERED** to prepare a special report under *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), containing the following information:

   a.    Medical records containing details of Stewart's injuries and condition after the bus collision which occurred on or about July 6, 2012.

   b.    Stewart's record of medical treatment since the collision which occurred on or about July 6, 2012.

   c.    Stewart's classification records, including but not limited to records of medical restrictions, which would have been available to custodial officers

   d.    Any affidavits or narratives which would aid the court in its analysis of the records.

e.    If appropriate, the Attorney General's *Martinez* report should also include a sworn account commenting on whether Stewart has exhausted all available remedies with respect to his claims.

The Attorney General is further **ORDERED** to comply with this Memorandum and Order by filing copies of the *Martinez* report and supporting records with this Court, and the United States District Courts for the Northern District (Abilene and Wichita Divisions) and Western District (Waco Division) of Texas, no later than November 12, 2014.

5.    Stewart's claims against Lieutenant Johnson and Sergeant Castillo are **SEVERED** and **TRANSFERRED** to the United States District Court for the Northern District of Texas, Abilene Division.

6.    Stewart's claims against Sergeant Kevin Schiwart, Correctional Officer Mimms and Correctional Officer Spencer are **SEVERED** and **TRANSFERRED** to the United States District Court for the Northern District of Texas, Wichita Division.

7.    Stewart's claims against Warden Cynthia Tilley, Captain Kevin Stipes, Lieutenant Kevin Harris, Sergeant Samuel Matthews, and Correctional Officer Jared Pollard are **SEVERED** and **TRANSFERRED** to the United States District Court for the Western District of Texas, Waco Division.

8.    Stewart's motion for court appointed counsel [Doc. # 10] is **DENIED**.

9.    The motions filed by Stewart's mother [Doc. # 6], [Doc. # 7], and [Doc. # 13] are **DENIED**.

8.    **The Clerk is directed to provide a copy of Plaintiff Stewart's Complaint and this Memorandum and Order to the plaintiff and to the District Clerks for the Northern District of Texas, Abilene and Wichita Divisions, and the Western District of Texas, Waco Division.**

9.   **The Clerk is also directed to provide a copy of Plaintiff Stewart's Complaint and this Memorandum and Order to Karen Matlock, Assistant Attorney General for the State of Texas, Law Enforcement Defense Division, 300 W. 15th Street, Austin, Texas 78701-1649, by Federal Express.**

SIGNED at Houston, Texas, on ___October 3_____, 2014.

Nancy F. Atlas
United States District Judge

24